ADAM J. STEWART, SBN 167403
LAWRENCE T. NIERMEYER, SBN 157440
MOORAD, CLARK & STEWART
1020 15th Street, Suite 10
Modesto, CA  95354
Phone: 209-526-0522
Fax: 209-526-4703

Attorneys for Plaintiff
JACOB TELLEZ

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB TELLEZ<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>COUNTY OF MERCED, MERCED COUNTY SHERIFF DEPARTMENT; CHARLES HALE, ERICK MACIAS and JOSE SAM SANCHEZ individually and as officers of the MERCED COUNTY SHERIFF'S DEPARMENT, and DOES 1-100,<br><br>　　　　Defendants | Case No.: 1:16-cv-00063 SAB<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS AND DAMAGES**<br><br>1. Violations of 42 USC § 1983 (Individual Defendants for 4th Amendment, Due Process and 14th Amendment Violations)<br>2. Malicious Prosecution in Violation of the Fourth Amendment (42 USC § 1983)<br>3. Violation of Civil Code 52.1<br>4. False Imprisonment/False Arrest<br>5. International Infliction of Emotional Distress<br>6. Defamation |

JACOB TELLEZ complains and alleges as follows:

## I.  JURISDICTION

1. This court has jurisdiction of federal claims under 42 USC § 1983.  This action arises under the United States Constitution, particularly under the provisions of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United Sates Constitution.

2. This Court has subject matter jurisdiction under 28 U.S.C §§ 1331, 1343.

## II.  PARTIES

3.  Plaintiff, JACOB TELLEZ is, and was at all times herein mentioned, a citizen of the United States, State of California, and a resident of Merced County.

4.  Defendant MERCED COUNTY is a county incorporated, duly organized and existing under the laws of the State of California. The County of Merced operates under its authority the Merced County Sheriff's Department. Pursuant to California Government Code § 815.2 (a), Merced County is liable for the individual Defendants' wrongful arrest and detention of Plaintiff in violation of his U.S. Constitutional rights as well as violation of Plaintiff's Constitutional rights under California Civil Code 52.1.

5.  Defendant MERCED COUNTY SHERIFF DEPARTMENT is a duly constituted municipal law enforcement agency that was created by and functions under the control of the County of Merced.

6.  Defendant, CHARLES HALE is, and at all times mentioned herein was an employee of the Merced County Sheriff's Office, acting under color of authority, and is being sued individually and in his official capacities.

7.  Defendant, ERICK MACIA is, and at all times mentioned herein was an employee of the Merced County Sheriff's Office, acting under color of authority, and is being sued individually and in his official capacities.

8.  Defendant, JOSE SAM SANCHEZ is, and at all times mentioned herein was an employee of the Merced County Sheriff's Office, acting under color of authority, and is being sued individually and in his official capacities.

9.  Plaintiff ignorant of the true names and capacities of Defendants sued herein as Does 1 through 100, inclusive, and therefore sued these defendants by such fictitious names. Plaintiff will amend this complaint to allege their names and capacities when ascertained. Plaintiff is informed and believes, and there on alleges, that each of these fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the aforementioned defendants.

### III. CONDITONS PRECEDENT

10. Plaintiff timely complied with the State Claim provisions of the California Government Code, in that the actions giving rise to the claim occurred from July 17, 2014 through December 30, 2014, at which time Plaintiff was released from incarceration. Plaintiff filed a timely government claim form with/against Merced County and each of the named Defendants on June 25, 2015. That claim was rejected on July 21, 2015 and the instant action filed.

### IV. NATURE OF THE CASE

11. On March 30, 2013, three people were murdered in a gun battle between rival gang members at a party in Atwater, California.

12. Plaintiff Joab Tellez together with several friends, including Ethan Morse, subsequently a co-defendant in the ensuing Merced County murder complaint, were at the party for approximately 15 minutes before they decided to leave.

13. As Plaintiff and his friends were leaving, several gang members arrived.

14. After getting into their vehicle Plaintiff and his friends heard gunshots and saw people running from the back yard while they were driving slowly away from the home.

15. Individuals, Matthew Fisher, a known gang member, and Samantha Pereira, were killed in the backyard. Another known gang member from a rival gang, Bernabed Hernandez Canela, was killed on Westside Blvd, West of the house where the party was being held, after being shot several times with two .38 and one .25 caliber bullets.

16. Approximately two weeks later, on or around April 15, 2013, Plaintiff was arrested as a suspect in the murder of Bernabed Hernandez based on a 911 call that he inadvertently made from his cell phone.

17. In the recording of the 911 call, that Plaintiff does not know he has dialed, Plaintiff excitedly talks about the shooting that has occurred. The call is extremely muffled and it is very difficult to make out much of what Plaintiff is saying.

18. Detective Pavelski of the Merced County Sheriff's Office ("MSO") interviewed Plaintiff about the shooting and Plaintiff admitted that he was at the party and was in possession of a .22 caliber revolver. Plaintiff also admitted that he started to pull out his gun but it got caught on the seatbelt and one of his friends grabbed his arm and told him not to get the gun out.

19. Following the interview and his review of the 911 call, Detective Pavelski released Plaintiff and asked the judge to recall the warrant for his arrest.

20. At some later time, Defendant Chuck Hale took over as the MSO Supervising Detective on the case.

21. In May, 2013, Defendant Erick Macias was assigned to be the lead MSO detective on the case. No significant further action was taken on the case until more than a year later in July, 2014.

22. In January, 2014, Merced County District Attorney, Larry Morse, publicly complained that Merced County, and specifically the Merced County Sheriff's Department were not putting enough resources into combating persistent gang violence. Mr. Morse specifically referred to the unsolved triple homicide in Atwater.

23. In July, 2014 in response to criticism by DA Morse, Defendants, Sanchez, Hale and Macias resolved to revive the triple homicide cold case.

24. Defendants Sanchez, Hale and Macias began targeting Plaintiff for the murder of Bernabed Hernandez, despite the fact they had no additional evidence against him, and despite the fact that the MSO had previously released Plaintiff for insufficient evidence.

25. On July 17, 2014, and in the absence of any new evidence, Plaintiff was rearrested for the murder of Bernabed Hernandez Canela. Plaintiff was interviewed by Defendant Sanchez, and in cooperation with the MSO Plaintiff told the same story as he had in April, 2015.

26. In addition to his previous version of the events, Plaintiff also informed MSO of certain information identifying another person, a well-known gang member Roe 2 as someone he saw shooting at a "Southerner".

27. Despite the fact that Bernabed Hernandez Canela was a known "Southerner", Defendants Sanchez, Hale and Macias did not follow up in this lead, despite the fact that they knew well known gang member Roe 2 was at the party, that he was shot at the party, and was a known gang member in a gang that was a rival gang to that which Hernandez was a member.

28. Defendant Hale had Plaintiff arrested prior to briefing the Merced DA's Office on July 17, 2015. This was a violation of standard practice for deputies/detectives to brief the Merced county District Attorney's Office ("DA") before making an arrest in a cold case or in out of custody homicides.

29. During the preliminary examination, Defendants Sanchez and Macias testified that they had not conducted any further investigation or collected any further evidence against Plaintiff between the time that Plaintiff was released on April 15, 2013 and his subsequent arrest on July 17, 2014.

30. During the subsequent briefing, Merced County District Attorney's Office was informed that the sole evidence against Plaintiff was the inadvertent 911call, "butt dial". However, Defendants Sanchez, Hale and Macias did not inform the DA's office that they had previously arrested and release Plaintiff based on exactly the same evidence and that Plaintiff had previously given a voluntary statement and had disclosed several witness that could corroborate his version of events.

31. Thereafter, Defendants Sanchez, Hale and Macias did not make any efforts to locate any of the witnesses nor to test the car that Plaintiff was in for gunfire prior to Plaintiffs' arrest. Hale also did not disclose that the "victim", Hernandez, was a known gang member, nor had his body ever been tested to see if he had fired a gun prior to being shot.

32. Plaintiff is informed and believes that, Ethan Morse told his father, DA Morse that he, Ethan, had been at the party with Plaintiff and that Plaintiff did not fire a gun from his car. DA Morse immediately notified Defendant Hale that there was a problem with the arrest of Plaintiff and arranged for Ethan Morse to speak with the detectives on Sunday, July 20, 2015.

33. On July 20, 2015, Ethan Morse was interviewed by Defendants Macias and Hale. Ethan Morse told the detectives information that corroborated what Plaintiff had told them

on two separate occasions, essentially that the kids were at the party for a few minutes and then left, that Plaintiff had a .22 gun, that another friend in the vehicle told Plaintiff not to shoot it and no shots were fired from the Morse vehicle. Morse offered to submit to a polygraph test, but his offer/request was denied.

34. Defendants Sanchez, Hale and Macias subsequently interviewed all of the passengers/witnesses that were in the Morse vehicle with the exception of one, Andrew Massengale, whose father would not allow him to speak with them without an attorney.

35. Defendants Sanchez, Hale and Macias implied to all the witnesses they interviewed that they may be charged with a crime if they did not change their story to the defendants' theory of the case.

36. Following his interview with the Sheriff's department, Ethan Morse told Defendants Macias and Hale that he would try to get everyone else that was in the car to come and voluntarily make a statement.

37. The other passengers in the car with Plaintiff and Ethan Morse were Sabrina Ceccolli, Cameron Johnson, Robert Tern, Andrew Massengale, Tony Gomes, and Jacob Delgadillo.

38. On July 22, 2014, Cameron Johnson was interviewed by Defendant Macias, Johnson told police that Plaintiff did not shoot a gun at any time while at the party. During his voluntary interview, Mr. Johnson felt police were trying to trick him into saying something that would inculpate Plaintiff and Ethan Morse. Mr. Johnson terminated the interview after Defendants were hostile, yelling at him, accusatory and treating him as if they did not believe him.

39. On July 22, 2014, Defendant Macias and another MSO officer interviewed Sabrina Ceccolli. Ceccolli said in her interview she was 100% sure and then later 95% sure that no one shoot a gun from the car. Her repeated statement that Plaintiff did not shoot a gun from the car are not in the police report.

40. After much convincing from Defendant Macias, Ceccolli agreed that some of the gunshots she heard were louder and perhaps those gunshots could have come from the car, however, she maintained that she didn't see Plaintiff shoot anyone.

41. On July 22, 2014, defendants Macias and Sanchez interviewed Robert Tern. Tern told a story that corroborated what Plaintiff and Morse had told Defendants on two occasions and what the other occupants of the vehicle had told the Defendants. Tern told Defendants that he was 100% positive that Plaintiff did not fire the gun.

42. As Tern did not corroborate their theory of the case, Defendants Macias and Sanchez threatened Tern that they "didn't want to have to put cuffs on someone that doesn't need them" and if he didn't stop lying they "could be done" and he would be booked in the county jail." They also threatened Tern that he would be a suspect in a triple homicide.

43. At some point, Tern tried to terminate the interview. When Tern attempted to terminate the interview, he was placed in handcuffs and detained for 45 minutes to an hour. The fact that Tern tried to terminate the interview and was out in handcuffs was not included in the police report. After being intimidated by Defendants Macias and Sanchez and threatened with arrest, Tern changed his story.

44. On July 24, 2014, Defendant Macias interviewed Jacob Delgadillo. Delgadillo corroborated the same story as all the other occupants in the car, in that Plaintiff did not shoot a gun from the car. He said he was absolutely sure that Plaintiff did not fire a gun from the vehicle.

45. Delgadillo's story was in fact consistent with all the other occupants in the vehicle that Plaintiff did not shoot a gun from the car.

46. On July 24, 2014, Defendant Sanchez and another MSO officer interviewed Tony Gomes. Gomes told the same story that he was 100% sure that Plaintiff had not fired a gun out of the vehicle. Gomes repeatedly told police that he had not seen or heard the gunfire come from the car.

47. During his interview, Mr. Gomes identified other shooters, including mentioning known well known gang members Roe 1 and Roe 2 as people he believed to be

blood gang members and that he saw shooting in an easterly direction. This was in fact that direction that Bernabed Hernandez was shot.

48. Defendant Sanchez ignored this part of Gomes' statement. Defendant Sanchez also ignored the consistent statement that Plaintiff was driving eastbound and that Bernabed Hernandez was shot on the right side of his head as he ran westbound.

49. The Attorney General's Office ("AG") was advised by Merced County DA, where Plaintiff's father is the elected DA, that they had a conflict in this case. At that time the AG took over the case. The AG picked up the case file on or around July 23, 2014.

50. AG Barton Bowers filed a criminal complaint against Plaintiff on July 29, 2014, wherein Plaintiff was charged with murder and gang enhancements. Plaintiff is informed and believes that Mr. Bowers did not listen to the interview, did not conduct an independent review, and filed the criminal complaint against Plaintiff solely in reliance on malicious representation from Defendants Sanchez, Hale and Macias.

51. Moreover, Defendants Sanchez, Hale and Macias and each of them, withheld substantial exculpatory information from the AG.

52. Plaintiff is informed and believes that Defendants Sanchez, Hale and Macias withheld from the AG that a well-known gang member, Roe 1, was interviewed in approximately March of April, 2013 and that he had placed himself at the crime scene, stated that he was in rival gang from Hernandez, and saw Hernandez just before he was shot. Well known gang member Roe 1 further informed police he was in the same gang as Matthew Fisher (one of the decedents shot in the gun battle) and well known gang member Roe 2 (who was shot) and that he transported Roe 2 and Samantha Pereira to the hospital. Despite this information, Defendants Sanchez, Hale and Macias did not attempt to locate Roe 2 and did not follow up with Roe 1.

53. None of this information was disclosed to Plaintiff in discovery and none of it is in the investigation/sheriff report. This is despite the fact that Gomes also gave a statement that implicated well known gang member Roe 1 and Roe 2. The failure to disclose this information violated Plaintiff's due process rights.

54. On November 4, 2014, a confidential informant came to the Merced Police Department to talk about the triple homicide in which Plaintiff was charged. The confidential informant told Merced PD Detective Paul Johnson that well known gang member Roe 1 had confessed that he and Roe 2 were responsible for shooting Hernandez.

55. Detective Johnson informed Defendant Hale of this information and Defendant Hale replied, "What, is Larry [referring to DA Morse] buying you lunch?" Defendant did nothing to follow up on this information, despite his knowledge of inculpatory statements previously made by well known gang member Roe 1 and the statement made by Gomes that inculpated well known gang members Roe 1 and Roe 2. No report of this information was made and Plaintiff is informed and believes that this information was withheld by Defendants Sanchez, Hale and Macias from AG Bowers.

56. Despite all the contrary and exculpatory evidence, Defendants Sanchez, Hale and Macias pressed on with their criminal allegations and complaint; thus, requiring Plaintiff and Ethan Morse to face a preliminary examination which was conducted from November 10-14, 2014.

57. Andrew Massengale was in the car with Plaintiff the night of the triple homicide. Massengale testified at the preliminary hearing under oath and his testimony corroborated the testimony given by every other witness before they were intimidated and coerced into changing their stories by Defendants Sanchez, Hale and Macias.

58. On November 14, 2014, Judge Ronald Hansen refused to hold Plaintiff or Ethan Morse to answer. Judge Hansen made a factual finding that Plaintiff did not fire a gun from the Morse vehicle. He found that both Plaintiff and Morse were factually innocent.

59. The court also made a finding that the 911 call did not contain any admission by Plaintiff that he had shot anyone. The court made a finding that the 911 call corroborated Plaintiff's version of events he had told police on two occasions and corroborated the initial stories told by all of the passengers/witnesses in the Morse vehicle.

60. The court noted that it could not hear the things that Defendant Macias had represented that were said on the call in Plaintiff's arrest warrant. The court further noted that the

important details of the events that gave rise to the complaint against plaintiff came from the questions of the Defendants Sanchez, Hale and Macias and not from the mouths of the witness.

61. Following the court's findings, Plaintiff remained in custody for the pending gun possession charges, but was subsequently released from custody with charges dismissed on December 30, 2014.

62. Following his arrest Plaintiff spent 5 months in county jail and had to endure a five day preliminary examination hearing. Plaintiff suffered and continues to suffer from severe emotional distress as a result of his incarceration and wrongful arrest and prosecution.

63. Despite overwhelming evidence that well known gang members Roe 1 and Roe 2 were responsible for the shooting of Bernabed Hernandez, the Sheriff's Department has done nothing to further the investigation and or prosecution of well-known gang members Roe 1 and Roe 2 because doing so would prove their incompetence and culpability in the wrongful arrest and detention of Plaintiff. Because of the lack of action, Plaintiff remains coved in a cloud of suspicion and the real perpetrators of this crime remain free.

64. The investigation, arrest and prosecution of Plaintiff described herein was malicious, without just cause, and violated Plaintiff's Fourth, Fifth and Fourteenth Amendment rights and proximately cause Plaintiff economic damages, including legal expenses, bail damages to his reputation and severe emotional distress.

**FIRST CAUSE OF ACTION**
(42 U.S.C § 1983 for 4th Amendment, Due Process 5th and 14th Amendment Violations)
Against Defendants Sanchez, Hale, and Macias

65. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 64 above.

66. In doing the acts complained of herein, DEFENDANTS Sanchez, Hale and Macias and DOES 1-25, inclusive, and/or each of them, acted under color of law to deprive Plaintiff of certain constitutionally protected rights, including, but not limited to:

    a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the Constitution of the United

States. Plaintiff's action specifically includes, but is not limited to the wrongful search and seizure of his person and the malicious prosecution that kept him seized until the criminal charges were dismissed.

b. The right to be free arrest without probable cause guaranteed by the Fourth Amendment to the Constitution of the United States.

c. The right to due process of law by being informed of all exculpatory evidence in the criminal case against him guaranteed by the Fourth and Fourteenth Amendments of the Constitution of the United States.

67. Defendants County of Merced and the Merced County Sheriff Department failed to supervise or properly train Defendants, Sanchez, Hale and Macias, and through their lack of proper training and supervision permitted these individual defendants to commit some or all of the acts complained of herein.

68. As a direct and proximate result of Defendant's and each of their, wrongful conduct, Plaintiff has suffered damages including, but not limited to, legal expenses, economic losses, loss of reputation, emotional distress, and other damages.

69. In doing the things alleged herein, conduct of Defendants Sanchez, Hale and Macias was despicable. Defendants Sanchez, Hale and Macias acted toward Plaintiff with malice, oppression, fraud, and with willful and conscious disregard to Plaintiff's rights, entitling Plaintiff to awards of punitive damages against these Defendants.

## SECOND CAUSE OF ACTION
**Malicious Prosecution in Violation of the Fourth Amendment
Against Defendants Sanchez, Hale and Macias**

70. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 69 above.

71. Defendants Sanchez, Hale and Macias caused the initiation of criminal proceeding for violation of California Penal Code section 187(a), Murder of Bernabed Hernandez Canela and violation of California Penal Code section 26100(c), Shooting from a

motor vehicle, against Plaintiff without probable cause and with malice and reckless indifference.

72. The actions complained of herein and specifically those set forth within paragraphs 46 through 48 and paragraphs 51 through 56 herein above, (i.e... Failing to investigate other identified perpetrators of the crime and knowingly withholding and/or omitting relevant and/or exculpatory evidence by Defendants Sanchez, Hale, and Macias), were performed by Defendants Sanchez, Hale, and Macias with the intent to harm Plaintiff by depriving him of his right to equal protection of the laws and the denial of his constitutional rights.

73. The actions complained of and set forth herein above also prevented the prosecutor, AG Bowers, from exercising his independent judgment in deciding to file charges against Plaintiff, further depriving Plaintiff of his right to equal protection of the laws and the denial of his constitutional rights.

74. In doing the acts complained of herein, Defendants Sanchez, Hale and Macias and DOES 1-25, inclusive, and/or each of them, acted under color of law to deprive Plaintiff of certain constitutionally protected rights, including, but not limited to.

    a. The right to be free from unreasonable searches and seizures, as guaranteed by Fourth Amendment to the Constitution of the United States. Plaintiff's action specifically includes, but is not limited to the wrongful search and seizure of his person and the malicious prosecution that kept him seized until the criminal charges were dismissed.

    b. The right to be free from arrest without probable cause guaranteed by the Fourth Amendment to the Constitution of the United States.

    c. The right to due process of law by being informed of all exculpatory evidence in the criminal case against him.

75. Defendants County of Merced and the Merced County Sheriff Department failed to supervise or properly train Defendants, Sanchez, Hale, and Macias, and through their

lack of proper training and supervision permitted these individual defendants to commit some or all of the acts complained of herein.

76. Following preliminary hearing, the criminal proceedings and any prosecution of Plaintiff for violation of Penal Code sections 187(a) and 26100(c) were terminated in Plaintiff's favor for lack of probable cause and/or evidence.

77. The criminal prosecution of Plaintiff for the murder of Bernabed Hernandez Canela was terminated after a finding of fact by the presiding Judge that Plaintiff did not commit the offense.

78. As a result of the complained of actions by Defendants Sanchez, Hale and Macias, Plaintiff was denied fundamental rights, was deprived of liberty, and was forced to answer criminal charges of the most heinous nature.

79. As a direct and proximate result of the wrongful conduct of Defendants Sanchez, Hale and Macias, Plaintiff has suffered damages including, but not limited to legal expense, economic losses, loss of reputation, emotional distress, and other damages.

80. In doing the things alleged herein, the conduct of Defendants Sanchez, Hale and Macias was despicable. Defendants Sanchez, Hale and Macias acted toward Plaintiff with malice, oppression, fraud, and with willful and conscious disregard to Plaintiff's rights, entitling Plaintiff to awards of punitive damages against these Defendants.

### THIRD CAUSE OF ACTION
### Violation of Civil Code 52.1
### Against All Defendants

81. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 80 above.

82. Plaintiff alleges that Defendants Sanchez, Hale and Macias caused the initiation of a malicious criminal prosecution against Plaintiff in violation of his First and Fourth Amendment rights under the United States Constitution and corresponding rights under the California Constitution.

83. The actions complained of herein and specifically those set forth within paragraphs 46 through 48 and paragraphs 51 through 56 herein above, (i.e... Failing to investigate other identified perpetrators of the crime and knowingly withholding and/or omitting relevant and/or exculpatory evidence by Defendants Sanchez, Hale, and Macias), were performed by Defendants Sanchez, Hale, and Macias under color of law and so performed to interfere with, deny and did in fact prevent Plaintiff from the exercise and/or enjoyment of his rights as secured and protected by the Constitution or laws of the United States or the Constitution and laws of the State of California.

84. As a direct and proximate result of the wrongful conduct and/or actions by Defendants Sanchez, Hale and Macias, Plaintiff has suffered damages including, but not limited to legal expenses, economic losses, loss of reputation, emotional distress, and other damages.

85. In doing the things alleged herein, the conduct of Defendants Sanchez, Hale and Macias was despicable. Defendants Sanchez, Hale and Macias acted toward Plaintiff with malice, oppression, fraud, and with willful and conscious disregard to Plaintiff's rights, entitling Plaintiff to awards of punitive damages against these Defendants.

### FOURTH CAUSE OF ACTION
**False Arrest/Imprisonment**
**Against Defendants Sanchez, Hale and Macias**

86. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 85 above.

87. Defendants Sanchez, Hale and Macias and DOES 1-50 and each of them by their actions caused Plaintiff to be confined or knew to a substantial certainty that Plaintiff would be confined due to their actions.

88. Defendants Sanchez, Hale and Macias made material misrepresentations and omissions in the arrest warrant that they knew would cause the judge to issue a warrant that was not supported by probable cause.

89. As a direct and proximate result of the wrongful conduct and/or actions by Defendants Sanchez, Hale and Macias, Plaintiff has suffered damages including, but not limited to legal expenses, economic losses, loss of reputation, emotional distress, and other damages.

90. In doing the things alleged herein, the conduct of Defendants Sanchez, Hale and Macias was despicable. Defendants Sanchez, Hale and Macias acted toward Plaintiff with malice, oppression, fraud, and with willful and conscious disregard to Plaintiff's rights, entitling Plaintiff to awards of punitive damages against these Defendants.

**FIFTH CAUSE OF ACTOIN**
**Intentional Infliction of Emotional Distress**
**Against Hale, Macias and Sanchez**

91. Plaintiff re-alleges and incorporates by reference herein paragraphs 1 through 90 as though fully set forth herein.

92. The intentional and/or reckless conduct Defendants Sanchez, Hale and Macias, as set forth herein above, and specifically those actions set forth within paragraphs 46 through 48 and paragraphs 51 through 56, (i.e... Failing to investigate other identified perpetrators of the crime and knowingly withholding and/or omitting relevant and/or exculpatory evidence by Defendants Sanchez, Hale, and Macias), were performed by Defendants Sanchez, Hale, and Macias under color of law and so performed to interfere with, deny and did in fact prevent Plaintiff from the exercise and/or enjoyment of his rights as secured and protected by the Constitution or laws of the United States or the Constitution and laws of the State of California, with the intent to cause Plaintiff emotional distress.

93. As the complained of intentional actions interfered with and prevented Plaintiff from the exercise and/or enjoyment of his fundamental Federal and State Constitutional rights and in violation of Plaintiff's rights under the 4th, 5th and 14th Amendments, the conduct by Defendants Sanchez, Hale and Macias was extreme, outrageous and so performed with willful and conscious disregard to Plaintiff's rights.

94. As a proximate result of Defendants' conduct, Plaintiff has suffered severe emotional distress.

95. The extreme and/or outrageous conduct as set forth above by Defendants Sanchez, Hale and Macias was a substantial factor in the severe emotional distress suffered by Plaintiff.

96. As a direct and proximate result of the wrongful conduct and/or actions by Defendants Sanchez, Hale and Macias, Plaintiff has suffered damages including, but not limited to legal expenses, economic losses, loss of reputation, emotional distress, and other damages.

97. In doing the things alleged herein, the conduct of Defendants Sanchez, Hale and Macias was despicable. Defendants Sanchez, Hale and Macias acted toward Plaintiff with malice, oppression, fraud, and with willful and conscious disregard to Plaintiff's rights, entitling Plaintiff to awards of punitive damages against these Defendants.

### SIXTH CAUSE OF ACTOIN
### DEFAMATION
### Against Macias, Hale, and Sanchez, and Does 1-100

98. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 97 above.

99. As described in detail above, Defendants Sanchez, Macias, Hale, and Does 1-100 have intentionally and knowingly published false information to others, falsely accusing Plaintiff of murdering Bernabed Hernandez Canela after shooting Bernabed Hernandez Canela from the back seat of a vehicle driven by Ethan Morse.

100. Each of the Defendants' defamatory conduct to the public and press was outside of the criminal investigation, and amounts simply to defamatory statements designed to influence public opinion about Plaintiff.

101. Defendants' false publications are *per se* defamatory.

102. As a direct and proximate result of the wrongful conduct and/or actions by Defendants Sanchez, Hale and Macias, Plaintiff has suffered damages including, but not limited to legal expenses, economic losses, loss of reputation, emotional distress, and other damages.

103. In doing the things alleged herein, the conduct of Defendants Sanchez, Hale and Macias was despicable. Defendants Sanchez, Hale and Macias acted toward Plaintiff with malice,

oppression, fraud, and with willful and conscious disregard to Plaintiff's rights, entitling Plaintiff to awards of punitive damages against these Defendants.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully request relief as follows:

1. For special, economic damages, and consequential damages according to prove.
2. For general and non-economic damages in the sum of $1,000,000.00;
3. For punitive damages against Defendants Sanchez, Hale and Macias;
4. For cost and reasonable attorney's fees;
5. For prejudgment interest at the legal rate; and
6. For such other further relief as the Court may deem proper.

Dated: 3/20/16

MOORAD, CLARK & STEWART

By: _____
LAWRENCE T. NIERMEYER
Attorney for Plaintiff